UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED DIDA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-00131-GCS |
| | ) |
| KIMBERLY HVARRE, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

## INTRODUCTION AND BACKGROUND

Before the Court is Plaintiff's complaint and motion for preliminary injunction. (Doc. 1, p. 28). Plaintiff contends that he has been denied food trays since January 6, 2024. Defendant Hvarre filed an opposition. (Doc. 22). For the reasons delineated below, the Court denies the motion.[1]

Plaintiff Mohamed Dida, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Big Muddy Correctional Center ("Big Muddy"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff seeks junctive relief. In Plaintiff's complaint, he asserts that he is a devout Muslim and practices his faith by engaging in the fasting and prayers of David. (Doc. 1). As part of this practice, Plaintiff fasts during the day and only eats in the

---

[1] No hearing on the motion is necessary because it is apparent from the face of Plaintiff's motion/complaint and reply that he is not entitled to the relief requested in this matter.

very early morning and evening. He also abstains from all meat, except for fish. Since January 2023, Plaintiff's meals have been delivered to his cell without issue. Beginning in December 2023, however, Plaintiff began having problems with his dietary trays and the delivery of them to his cell.

On December 14, 2023, Plaintiff did not receive his evening meal tray, which consists of both lunch and dinner. Correctional Officer Jackson reminded dietary about Plaintiff's meal, and Plaintiff received his meal about two hours late. The next day, a correctional officer had to again remind dietary about delivering Plaintiff's meal to his cell. Dietary told the officer that "delivery stopped." Plaintiff did not receive any prior notice of the change and went hungry that evening. On December 16, 2023, Plaintiff was woken up by a correctional officer at midnight and told that food delivery to his cell had stopped and instructed Plaintiff to go to dietary at 3:30 am for his breakfast tray and again at 7:00 pm for his lunch and dinner tray.

On December 17, 2023, Plaintiff went to dietary at 3:30 am for his breakfast tray as instructed. When he arrived, he was told to return to his cell because they were not serving breakfast. Plaintiff was instructed to come back at 5:30 am with the other inmates. Plaintiff was allowed to receive his lunch and dinner tray at sunset until January 6, 2024.

Plaintiff asserts that he has not been provided breakfast since December 17, 2023, and he has not been given an evening tray since January 6, 2024. He states he was told he had 20 minutes to eat his meals at dietary, contrary to his approved dietary plan. Plaintiff claims that the substance of his meals has also recently been modified. At some point he was given the option of receiving the Jewish meal tray or the normal tray, which contains

meat. Plaintiff states that neither option conforms to his religious beliefs. Because he is no longer being provided meals in accordance with his faith, he had to purchase fish and beans from the commissary to eat. Plaintiff, however, has spent most of his money and cannot continue to purchase food. He states that he is diabetic, and the lack of full and consistent meals could worsen his condition.

On January 23, 2024, pursuant to 28 U.S.C. § 1915A, the Court screened Plaintiff's complaint and allowed him to proceed on the following claims:

> **Count 1**: First Amendment Claim for denying Plaintiff diet in compliance with his religious practices; and
>
> **Count 2**: Religious Land Use and Institutional Persons Act ("RLUIPA") claim for denying Plaintiff a diet in compliance with his religious practices.

(Doc. 11. p. 2-3). The Court also construed the complaint as a request for preliminary injunction. *Id*. at p. 3.

On January 19, 2023, Jeff Fernberg, Chaplain II at Big Muddy, sent a memorandum to Warden Richard Morgenlthaler about Plaintiff's religion and meal plan before and during Ramadan. It states Plaintiff is to receive a regular food tray, but that he is not to receive meat, other than fish, due to Islamic laws regarding the slaughtering of animals. From January 21, 2023, to March 22, 2023, Plaintiff's morning meals are at 5:00 am and Plaintiff's evening meals are at 6:15 pm Chaplain Fernberg notes that Ramadan begins March 23, 2023, and ends April 21, 2023, and that a separate memorandum will follow for the Ramadan schedule. (Doc. 22-2, p. 2). Thereafter on August 4, 2023, Fernberg issued a memorandum to Defendant Hvarre stating that Plaintiff will be fasting for lunch meals

from August 17, 2023, through January 31, 2024; that he will continue to receive breakfast at 3:45 am and that he will receive his dinner tray at 7:30 pm (Doc. 22-2, p. 1).

John Case, Food Service Manager at Big Muddy, declared the following regarding Plaintiff:

1. Plaintiff is a devout Muslim.
2. Plaintiff never gave Chaplain Fernberg the 338 form for a specific religious diet and has never chosen to be on a specific religious diet. The only documentation that he received was a memorandum from the Chaplain stating Plaintiff's fasting schedule.
3. Plaintiff follows the "Fast of David" which calls for all food to be consumed outside daylight hours.
4. Breakfast is served to all inmates daily starting at 3:30 am
5. Plaintiff is served a double-portion meal in the evenings. Unlike other inmates' meals, Plaintiff's evening meal is kept warm past regular dinner hours, and Plaintiff is allowed a separate time to eat in the mess hall after sunset.
6. Plaintiff, like all inmates, is allotted 20-25 minutes to eat his meals.
7. At some point, Case discovered that Plaintiff's meals were being delivered straight to Plaintiff's cell; that Case never approved the practice of delivering meal trays to Plaintiff's cell; and that Case instructed staff that Plaintiff should come to the mess hall to eat his meals. Inmates are discouraged from eating in the cells, unless there is a good, documented reason. Case does not have documentation establishing a religious need for Plaintiff to eat his meals in his cell.
8. Case is not aware that Plaintiff is diabetic or on any medical dietary restriction.

(Doc. 22-1).

In the month of January 2024, Plaintiff purchased food from the commissary four separate times for a total of $150.12. Included in these food purchases, *inter alia*, were *beef noodles* (24 packets purchased twice), fish, lemon cookies, toaster pastries, and bags of candy. (Doc. 22-4, p. 3,4).

Plaintiff's counseling summaries on January 8, 11, and 17, 2024, contain responses to three of Plaintiff's grievances: #38-1-23; #179-12-23; and K55-0124-0136. As to

grievance #38-1-23, Plaintiff was informed that he was given the opportunity to go to breakfast every day; that breakfast time does not interfere with Muslim prayer times; and that if he wanted breakfast, he was to walk to dietary with D wing in R1. As to grievance #179-12-23, the response states that "Dida was never refused chow. He was told that from now on he will go to chow with the rest of R1 D wing. Dida did not like that he was told he was going with the rest of the wing and refused to go to chow. Per email sent out from the Chaplain he can go eat breakfast with R1." Similarly, the response to grievance K55-0124-1036 reads "[i]n response to grievance K55-0124-0136, since breakfast is offered during non-daylight hours, the individual can still observe David's Fasting and Prayer. Individual will no longer have his breakfast tray brought to his cell and can go on the normal breakfast line. No religious freedoms are being denied. The facility is also accommodating the individual's fast, by providing him double portion during his dinner." (Doc. 22-3).

In his reply dated February 21, 2024, Plaintiff states that on January 6, 2024, after he picked up his two trays in dietary in the evening to take to his cell, a food supervisor told him to eat his food in dietary, and he explained to the food supervisor why he could not eat his food in dietary and kept walking. He eventually was stopped by a correctional officer who took the trays and informed him that John Case instructed him to get the trays. Plaintiff "left and never went back to dietary again." (Doc. 28, p. 18).

### DISCUSSION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that the plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520

U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *See Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

In the context of prisoner litigation, there are further restrictions on a court's remedial power. The scope of a court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). *See also Westefer*, 682 F.3d at 683 (noting that the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a *mandatory* preliminary

injunction. *See Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id. See also W.A. Mack, Inc., v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (stating that "[a] preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in the final decree.").

Regarding the first element, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). If Plaintiff meets his burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*

Under the First Amendment, prisoners enjoy a right to the free exercise of their religion. *See Vinning-El v. Evans*, 657 F.3d 591, 592-593 (7th Cir. 2011). However, a prison may impose restrictions on the exercise of religion that are reasonably related to the legitimate penological objectives of the state. *See Tarpley v. Allen County, Indiana*, 312 F.3d 895, 898 (7th Cir. 2002) (citations omitted). In determining whether an asserted justification is related to a legitimate penological objective, courts consider whether there are alternative means of exercising the right that remain open to the inmate, the impact an accommodation of the asserted right would have on guards and other inmates, and whether there are "obvious alternatives" to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). "In the context of a religion's dietary requirements, a 'prisoner's

religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition.'" *Taylor v. Cook County*, No. 11 C 7427, 2013 WL 2285806, at *7 (N.D. Ill. May 23, 2013). Correctional officials, however, are allowed to "appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

RLUIPA prohibits prison officials from imposing a "substantial burden on the religious exercise of a person" unless the prison can demonstrate that the burden is "in furtherance of a compelling governmental interest" and is also "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* at § 2000cc-5(7)(A). The exercise sought must be based on a sincerely held religious belief and not some other motivation. *See Holt v. Hobbs*, 135 S.Ct. 853, 862, 190 L.Ed.2d 747 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2774, n.28, 189 L.Ed.2d 675 (2014)). Under RLUIPA's burden shifting regime, a plaintiff initially has the burden to demonstrate that his exercise of religion has been substantially burdened. *Holt*, 135 S.Ct. at 862-863. A substantial burden exists if a state action or prohibition "seriously violates" an inmate's religious beliefs. *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015) (quoting *Holt,* 135 S.Ct. at 862). If a plaintiff meets his burden, the burden then shifts to the defendants to demonstrate both a compelling governmental interest and that the act or prohibition in question was the least restrictive means of furthering that interest. *Holt*, 135 S.Ct. at 863. As RLUIPA provides "greater

protection" than that provided by the First Amendment, *see id.* at 862, the undersigned first addresses whether Plaintiff has a likelihood success on his RLUIPA claim, and should Plaintiff fail on said claim, there is no need to address to the First Amendment Free Exercise claim.

The undersigned finds that Plaintiff has not met his burden of demonstrating that he is entitled to a preliminary injunction as he cannot show that he has been denied access to food. Frankly, it appears that Plaintiff is upset that he cannot eat his meals in his cell anymore as his meals are no longer being delivered to his cell. The practice of delivering food trays to his cell is not a religious need that is supported by any documentation contained in the record. There is no evidence that Plaintiff was forced to choose between his religious practice of eating outside daylight hours and receiving adequate nutrition. He has the option of going to dietary before sunrise and after sunrise and eating the food in dietary as all other inmates and has chosen not to go to dietary. *See* (Doc. 28, p. 18).

As to Plaintiff's food plan, the record states that Plaintiff "is not to receive meat of any kind other than fish due to Islamic laws regarding the slaughtering of animals. Otherwise, he is to receive a regular food tray." (Doc. 22-2). The record states that Plaintiff is provided a regular food tray, no meat other than fish in the morning before sunrise and a double portion regular food tray, no meat other than fish in the evenings after sundown. Moreover, Plaintiff is and was able to purchase food items from the commissary to supplement his diet. During the month of January 2024, Plaintiff purchased food items from the commissary 4 separate times, two of which included him buying beef noodles

(totaling 48 packets).[2] The purchase of beef noodles appears to be in direct conflict with Plaintiff's dietary plan/request of no meat. Thus, one could question the sincerity of Plaintiff's dietary request/plan as eating beef noodles would not comply with the tenets of Plaintiff's faith. For these reasons, the Court finds that Plaintiff has not established a likelihood of success on the merits on his First Amendment and RLUIPA claims.[3]

Second, Plaintiff must show that he lacks an adequate remedy at law. The Court concludes that Plaintiff has not demonstrated that his legal remedies are inadequate. Plaintiff can prosecute his case to achieve the legal remedies he seeks. Such injunctive relief is not warranted when the order would give "to plaintiff the actual advantage which would be obtained in the final decree." *W.A. Mack*, 260 F.2d at 890.

Lastly, to demonstrate entitlement to preliminary relief, Plaintiff would need to establish that irreparable harm will result if injunctive relief does not issue. Here, Plaintiff has failed to show any actual danger that he is experiencing.

## CONCLUSION

For the above-stated reasons, the Court **DENIES** Plaintiff's motion for preliminary injunction. (Doc. 1).

**IT IS SO ORDERED.**

**DATED: April 24, 2024.**

Digitally signed by Judge Sison
Date: 2024.04.24 13:16:01 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[2] Plaintiff admits that he ate the noodles. "All I depend on were few noodles, beans and fish I purchase in January, . . . ." (Doc. 28, p. 7).

[3] Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.